IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISON

| | |
|---|---|
| 5316 SUPERIOR, LLC, d/b/a BUCKS WILD, § § § *Plaintiff*, § § v. § § CIVIL ACTION NO. _____ THE CITY OF FORT WORTH, § THE CITY OF FORT WORTH CODE § COMPLIANCE DEPARTMENT, § THE CITY OF FORT WORTH POLICE § DEPARTMENT, § § *Defendants*. § | |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT &
APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff 5316 Superior, LLC d/b/a Bucks Wild, files this Verified Original Complaint and Application for Temporary and Permanent Injunctive Relief against the Defendants, the City of Fort Worth, the City of Fort Worth Police Department and its Code Compliance Department.

**NATURE OF SUIT**

1. This is an action for injunctive relief and money damages pursuant to 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the United States Constitution.

2. Plaintiff operates a BYOB restaurant that features exotic dance entertainment. Under the auspices of enforcing Governor Greg Abbott's most recent Executive Order GA-18 ("EO 18"), Defendants unlawfully ordered Plaintiff's business to close its doors under threat of arrest and prosecution. What reason did Defendants offer for this arbitrary command and threat? Because Plaintiff operates a "sexually oriented business" that offers entertainment.

3. Defendants' arbitrary actions have no bearing in the law or the exigencies of the coronavirus pandemic. The Governor's series of executive orders were issued to protect the safety and health of Texas citizens against the threat of disease, and more recently, to ensure that commerce in this state may gradually resume in a responsible manner. None of those orders—past or present—have suspended the United States Constitution or conferred upon municipal officials the unfettered power to selectively shutter certain businesses because of the expression they offer.

## PARTIES

4. Plaintiff 5316 Superior, LLC d/b/a Bucks Wild is a Texas limited liability company doing business in Tarrant County, Texas.

5. Defendant City of Fort Worth is a municipality organized under Texas law. It may be served by delivering a copy of the complaint to the Mayor, City Manager, Clerk, and/or Secretary for the City at 1000 Throckmorton St., Fort Worth, Texas 76102.

6. Defendant City of Fort Worth Police Department is law enforcement agency organized and existing as a departmental subdivision of the City of Fort Worth. It may be served by serving the Chief of Police, Fort Worth Police Department, 350 W. Belknap, Fort Worth, Texas 76102

7. Defendant City of Fort Worth Code Compliance Department is an agency organized and existing as a departmental subdivision of the City of Fort Worth. It may be served by delivering a copy of the complaint to its Director, Brandon Bennett, at 818 Missouri Ave., Fort Worth, Texas 76104.

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over all civil matters arising under the laws of the United States and has jurisdiction to award damages and grant

equitable or other relief. Specifically, this Court has jurisdiction because this is an action arising under the First and Fourteenth Amendments to the United States Constitution.

9. Venue of this case lies in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b) because all events giving rise to the claim occurred within the Northern District of Texas, Fort Worth Division.

## **FACTS**

10. On April 27, 2020, Governor Abbott issued EO 18 relating to the expanded reopening of certain sectors of the economy as part of the state's plan to strategically and safely "Open Texas" in response to the global coronavirus disaster. EO 18 provided that as of Friday May 1, 2020, certain "Reopened Services" would be allowed to operate even if they were not "Essential Services." (**Exhibit A**, Executive Order, p. 3). "Reopened Services" includes:

> b) Dine-in restaurant services, for restaurants that operate at up to 25 percent of the total listed occupancy of the restaurant; provided, however, that (a) this applies only to restaurants that have less than 51 percent of their gross receipts from the sale of alcoholic beverages and are therefore not required to post the 51 percent sign required by Texas law as determined by the Texas Alcoholic Beverage Commission….

11. EO 18 further provides that "people and businesses should follow the minimum standard health protocols recommend by the [Department of State Health Services] … and should implement social distancing … and practice good hygiene, environmental cleanliness, and sanitation." (**Exhibit A**, Executive Order, p. 4).

12. Bucks Wild derives less than 50 percent of its gross receipts from the sale of alcohol because it does not sell alcohol at all—it is a BYOB establishment that offers dine-in restaurant services. It also happens to feature a form of expressive conduct and entertainment—exotic dance.

13. Well before coronavirus altered daily life, Bucks Wild has sold food to its patrons, advertising on its website that it is open until 2:00 a.m. on weekdays "with the kitchen cooking it up all night long" and holding a free buffet on every "Super Tuesday."

14. Unsurprisingly, the City of Fort Worth has previously told Bucks Wild that it is a restaurant, not just a bar. In late 2017, municipal officials informed Bucks Wild that it was subject to the Fort Worth's indoor smoking ban because "Restaurants that contain a bar are not considered a 'bar'" (**Exhibit B**). Indeed, as recently as February 13, 2020, the City's Code Compliance Department categorized Bucks Wild as a "restaurant" in its inspections database. (**Exhibit C**).

15. Once coronavirus impacted the citizens and businesses of this state, Bucks Wild abided by the Governor's orders and temporarily closed its doors to the public. However, with the announcement of EO 18, Bucks Wild developed a detailed plan to safely reopen its business on May 1, 2020. The business designed and implemented strict policies derived from the protocols recommended by the Texas Department of State Health Services ("DSHS").

16. For instance, a staff member is stationed at the front door with a crowd control tally counter to account for every person who goes in and out of its premises, the purpose of which is to ensure that Bucks Wild complies with EO 18's 25 percent occupancy limitation.

17. Every person who enters the premises must have their temperature taken with a handheld temperature scanner. All patrons are required to wear approved masks in order to gain entry. The same holds true for all personnel, who must also wear masks and gloves as they go about their work.

18. Hand sanitizer stations are positioned throughout the club. Food is served in disposable containers and with disposable utensils so that potentially contaminated eating surfaces are not placed in circulation.

  

19. Once inside, all guests and personnel are required to maintain proper social distancing. Groups of no more than six people may sit at a table. All tables are spaced apart. Dancers may only perform on-stage and may not offer 'table dances' or otherwise make physical contact with patrons.

20. These are but a few examples of the measures taken. In all ways, Bucks Wild both qualifies as a Reopened Service and has complied with the requirements and recommendations of EO 18. The club—a business that supports the livelihoods of numerous individuals—has endeavored to comply with all existing public health guidelines to protect the safety and health of its staff and patrons.

21. On May 4, 2020, officials with the City of Fort Worth convened a meeting at Bucks Wild—not to laud these efforts—but to tell the business that it must shutdown.

22. At approximately 8:00 p.m., Consumer Health Specialist Crispin Gipson with the City's Code Compliance Department appeared at Bucks Wild. Accompanying him was a police lieutenant with the City of Fort Worth Police Department. The principals of Bucks Wild, Kevin "Rich" Richardson and Curtis Wise, greeted the officials and asked how they could help them.

23. Inexplicably, Mr. Gipson informed them that Bucks Wild must immediately close its doors. When asked for an explanation or some kind of basis for this spontaneous mandate, Mr. Gipson explained that Bucks Wild must shut down 'because you are a SOB,' *i.e.*, a sexually-oriented business.[1]

24. Mr. Richardson responded that Fort Worth's legal department had previously told him that Bucks Wild is considered a restaurant, that the business has since continued to operate as a restaurant, and is in compliance with EO 18. None of this fazed Mr. Gipson, who found a new reason for ordering the business's closure. According to Mr. Gipson, the City of Fort Worth had closed down other SOBs that sold alcohol.

25. Of course, this rationale did not apply to Bucks Wild because, as Mr. Richardson explained to the officials, it does not sell alcohol and could not do so even if it so desired as it has not obtained the requisite permitting from the State of Texas.

26. Mr. Gipson—confused as to the fact that Bucks Wild does not have a liquor license and does not sell alcohol—retreated to place phone calls with his superiors. Upon his return, Mr. Gipson repeated his original position—the City requires Bucks Wild to close its doors because it is a SOB that features entertainment.

27. When his logic was challenged on the basis that movie theaters feature entertainment and are allowed to remain open within the limitations set forth in EO 18, Mr. Gipson explained that the distinction did not matter—he was authorized to order Bucks Wild to shut down because it is a SOB.

---

[1] Presumably, this was a reference to the statutory definition of a "Sexually oriented business" which means "**a nightclub, bar, restaurant**, or similar commercial enterprise that (A) provides for an audience of two or more individuals live nude entertainment or live nude performances; and (B) authorizes on-premises consumption of alcoholic beverages, regardless of whether the consumption of alcoholic beverages is under a license or permit issued under the Alcoholic Beverage Code." TEX. BUS. & COM. CODE § 102.051(2)(A)-(B) (emphasis added).

28.     Baffled by this exchange, Mr. Richardson asked what would happen if he refused the City's command. The police lieutenant accompanying Mr. Gipson explained that he would arrest Mr. Richardson and anyone else who continued the operation of the business in his stead.

29.     With this threat of unlawful arrest levied against him and others, and wanting to avoid triggering additional police presence at Bucks Wild and spending the night in jail, Mr. Richardson complied and closed the business down.

30.     At no time during this conference did the municipal officials inquire as to whether Bucks Wild was otherwise complying with EO 18, the health and safety protocols recommended by the DSHS, or any other local or state regulations. The one thing that mattered to the municipal officials was their unfounded belief that EO 18 somehow granted them the right to order Bucks Wild's closure because it is a SOB that features entertainment. Indeed, the only investigation that municipal officials undertook was to photograph Bucks Wild's SOB permit before departing.

31.     Defendants' actions were completely unlawful. The reality is that Bucks Wild is a Reopened Service within the plain language of Governor Abbott's latest EO. It was lawfully operating when Defendants ordered it to close down. That Bucks Wild offers constitutionally protected expression does not mean that it has less of a right to operate than any other restaurant in the State of Texas.

32.     Plaintiff's counsel has conferred with Mr. Chris Mosley with the City of Fort Worth Legal Department regarding the nature of this complaint and the relief sought herein. Mr. Mosley indicated that he is opposed to the relief sought.

## CAUSES OF ACTION

33. Over 100 years ago, the Supreme Court explained that states may exercise their police powers to safeguard the public health and safety against the threat of disease, but that such power is not unlimited:

> The mode or manner in which those results are to be accomplished is within the discretion of the state, subject, of course, so far as Federal power is concerned, only to the condition that no rule prescribed by a state, nor any regulation adopted by a local governmental agency acting under the sanction of state legislation, shall contravene the Constitution of the United States, nor infringe any right granted or secured by that instrument. A local enactment or regulation, even if based on the acknowledged police powers of a state, must always yield in case of conflict with the exercise by the general government of any power it possesses under the Constitution, or with any right which that instrument gives or secures.

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905).

34. Section 1983 provides the vehicle for redress of a violation of constitutional rights. A person who, acting under color of law, subjects or causes to be subjected any United States citizen to the deprivation of any rights, privileges, or immunities secured by the United States Constitution, shall be liable to the party injured in an action at law. 42 U.S.C. § 1983

35. At all relevant times and regarding all relevant actions of the Defendants as alleged in this Complaint, the Defendants were acting in their official capacities, under color of state law, and pursuant to the official policies, practices and customs of the governmental agencies or entities which the Defendants respectively represent.

36. Defendants, acting under color of law, have subjected and caused Plaintiff to be subjected to the deprivation of its rights, privileges, or immunities as secured by the First and Fourteenth Amendments. Specifically, Defendants have violated Plaintiff's civil rights by ordering the business to shut down without any legal basis, prior notice or hearing, and by threatening its representatives with unlawful arrest and imprisonment.

### A. Violation of the First Amendment

37. The First Amendment guarantees the right to free expression and association. U.S. CONST. AMEND. I.

38. Plaintiff's business offers protected expression, *i.e.*, exotic dancing. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). Implicit in the right to engage in First Amendment-protected activities is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). Defendants' actions were motivated by a desire to prevent and preclude Plaintiff from engaging in protected expression without any justifiable reason.

39. Indeed, Defendants' actions amount to a prior restraint. "When public officials are given the power to deny use of a forum in advance of actual expression … the danger of prior restraints exists." *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004). In the absence of any procedural safeguards, Defendants have arbitrarily denied Plaintiff the right to use its premises to feature expressive conduct and/or because of the type of expression offered.

40. Expression loses its meaning with no audience. Ordering Plaintiff to close Bucks Wild eliminates its patrons' right of access to protected expression and impinges upon the rights of the performers who seek to earn a living by engaging in such communicative activities. *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-94 (1988) (observing that vendors of adult entertainment have standing to assert First Amendment rights of their patrons generally). Plaintiff has a sufficiently concrete interest in the outcome because the Defendants' conduct causes it to suffer economic injury through constriction of its market or function. In ordering the closure of Bucks Wild without any legitimate justification, Defendants also deprive third-parties of their expressive and associational rights. *See Craig v. Boren,* 429 U.S. 190 (1976) ("[V]endors and those

in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function").

**B.     Violation of the Fourteenth Amendment—Selective Enforcement/Class of One**

41.     The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1.

42.     Plaintiff has been intentionally treated differently from other similarly situated restaurants because it features entertainment. On information and belief, other establishments in the area that offer food services and/or entertainment—*e.g.*, movie theaters and dining establishments that feature scantily clad waitresses—have not faced arbitrary closure. Defendants have targeted Plaintiff's business and disparately applied the facially neutral parameters of EO 18 to close Plaintiff's business.

43.     There is no rational basis for the Defendants' differential treatment of Plaintiff and its capricious application of EO 18. The closure of Bucks Wild serves no legitimate public safety purpose whatsoever; coronavirus is spread through person-to-person contact, not socially distanced forms of expression or communicative activities.

44.     Through their words and actions, the Defendants have evinced their improper motivation as driven by an impermissible consideration—the desire to prevent the exercise of a constitutional right, namely the right of Bucks Wild and its patrons, guests, workers, and visitors to exercise their rights of association and expression under the First Amendment. The Defendants use their contorted understanding of EO 18 and the exigencies of the coronavirus pandemic as arbitrary tools of economic oppression.

### C. Violation of the Fourteenth Amendment—Due Process

45. Procedural due process imposes constraints on governmental decisions that deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of Fourteenth Amendment. U.S. CONST. AMEND. XIV, § 1. This includes the right to have and use the property and the benefits from it, as well as the "liberty to operate a legitimate business, free from arbitrary deprivation by local police acting under the color of state law." *San Jacinto Savings and Loan v. Kacal*, 928 F. 2 d 697, 702 (5th Cir.1991).

46. Defendants had no basis in federal, state, or local law to threaten the arrest of Bucks Wild's representatives. Nor do they have any basis in the law—pursuant to EO 18 or otherwise—to unilaterally decide that Bucks Wild must close its doors and terminate its business without supporting such a draconian decision in any basis or logic.

47. Defendants closed Plaintiff's business without giving it notice or an opportunity to be heard. Defendants' decisions were arbitrary, capricious, unjustified by the necessities of the situation, and executed without reference to any law or procedure. In all ways, the Defendants' exercise of unfettered and unconstrained authority is a violation of Plaintiff's right to due process of law.

### APPLICATION FOR INJUNCTIVE RELIEF

48. Plaintiff seeks a temporary restraining order, preliminary and permanent injunction precluding Defendants from their unlawful conduct and requiring them to comply with the following:

   a. arresting or threatening to arrest any employee or representative of Bucks Wild for conducting its ordinary business operations;

   b. maintaining a physical presence at Bucks Wild, or within 400 meters of the Bucks Wild premises, for longer than thirty minutes, unless investigating criminal activity with probable cause;

    c. closing or attempting to close Bucks Wild or impeding its business operations under color of Governor Greg Abbott's Executive Order GA 18;

    d. requiring Defendants to produce all documents and communications relating to investigations of Bucks Wild from the time period of May 4, 2020 through May 15, 2020, and to produce within five days before the hearing on Plaintiff's temporary injunction; and

    e. produce a privilege log and articulate the legal basis for any privilege they assert for all documents withheld from subsection d. above, and shall produce it five days before the hearing on Plaintiff's temporary injunction.

49. Bucks Wild is entitled to injunctive relief because it has (1) a substantial likelihood of success on the merits; (2) Defendants' conduct presents a substantial threat that it will suffer irreparable injury absent the injunction; (3) this threatened injury outweighs any harm the injunction might cause the Defendants; and (4) the injunction will not impair the public interest.

50. As set forth above, Defendants' conduct demonstrates that Plaintiff has a substantial likelihood of success on the merits. Closing a business and threatening the arrest of its proprietors—expressly because of the content offered and without any form of due process—is a blatant violation of the Constitution. *See Brown v. Texas*, 443 U.S. 47 (1979); *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000).

51. Absent an injunction, Plaintiff will suffer irreparable injury. Businesses have a right to transact lawful business. The loss of constitutional freedoms for "even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

52. Monetary relief is insufficient as a matter of law because the harm Plaintiff will suffer between now and trial if not allowed to operate will result in the loss of business.

53. An injunction will not significantly burden any of the Defendants' interests because nothing in the injunction in any way inhibits Defendants' legal law enforcement function. Indeed, the public interest strongly favors the issuance of injunctive relief to protect the constitutional

rights at stake in this case and to prevent the broader expansion of unfettered state and local authority deployed under the guise of protecting against the spread of coronavirus.

## DAMAGES

54. Plaintiff requests all actual damages resulting from, or proximately caused by Defendants' actions as described in this Complaint, including attorneys' fees incurred to mitigate damages caused by Defendants' actions. Plaintiff also requests all consequential, out-of-pocket or reliance, lost profits, restitution, goodwill or business reputation, and loss-of-use damages. Plaintiff also requests pre-judgment and post-judgment interest on any award of damages along with its costs of court.

## ATTORNEYS' FEES

55. Plaintiff requests payment of its reasonable attorneys' fees, expert fees, and costs. 42 U.S.C. § 1988.

## PRAYER

WHEREFORE, Plaintiff 5316 Superior, LLC d/b/a Bucks Wild respectfully requests judgment be entered in its favor and that it be awarded the following:

    a. Temporary restraining order, preliminary and permanent injunctive relief;

    b. Attorney's fees and expert fees;

    c. Costs of suit;

    d. Prejudgment and post-judgment interest as allowed by law;

    e. All other relief, in law and in equity, to which plaintiffs may be entitled.

Respectfully submitted,

WALLACE & ALLEN, LLP

*/s/ Casey T. Wallace*
Casey T. Wallace
State Bar No. 00795827
Benjamin W. Allen
State Bar No. 24069288
William X. King
440 Louisiana, Suite 1500
Houston, Texas 77002
Tel: (713) 224-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
ballen@wallacellen.com
wking@wallaceallen.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2020, I served a copy of the Original Complaint on the following individuals via ECF and email transmission in compliance with the Federal Rules of Civil Procedure.

Chris Mosley
City of Fort Worth Legal Department
200 Texas St.
Fort Worth, TX 76102
Tel: 817-392-7600
Fax: 817-392-8359
Chris.mosley@fortworthtexas.gov

*/s/ Casey T. Wallace*
Casey T. Wallace